UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMAL MULHEM, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) Civil Action No._____ |
| v. | ) |
| | ) |
| NCO FINANCIAL | ) |
| SYSTEMS, INC. | ) |
| and AMERICAN EXPRESS | ) |
| CENTURION BANK, | ) |
| | ) |
| DEFENDANTS. | ) |

## COMPLAINT

Plaintiff, Amal Mulhem, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants NCO Financial Systems, Inc., and American Express Centurion Bank. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Breach of Contract, and for violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

2. Venue in this District is proper because Defendants reside and transact business here.

## PARTIES

3.  Plaintiff, Amal Mulhem ("Plaintiff") is an individual and resident of Cook County, Illinois, and is a "consumer" as defined at 15 U.S.C. §1692a(3) of the FDCPA.

4.  Defendant, NCO Financial Systems, Inc., ("NCO"), is a Pennsylvania corporation engaged as a "debt collector" as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts. From its offices in Illinois, and 31 other states, as well as 11 foreign countries, Defendant NCO operates a nationwide debt collection business and attempts to collect debts from consumers in every state, including many thousands of consumers in the State of Illinois. In fact, Defendant NCO was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

5.  Defendant, American Express Centurion Bank ("Amex") was and is a bank with its principal place of business in Salt Lake City, Utah.

## FACTS

6.  Sometime before February 3, 2010, Plaintiff incurred an alleged financial obligation for personal, family or household purposes, and said alleged obligation is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5). Namely, Plaintiff incurred a bill from an American Express credit card with account number XXXX-XXXXXX-21009 for charges she had previously made on the same (hereinafter "alleged debt").

7.  Sometime thereafter, Plaintiff experienced financial difficulty and was unable to timely pay down the alleged debt, and defaulted on the same.

8. Amex thereafter, through its attorney Zwicker and Associates, P.C. ("Zwicker"), filed a law suit against Plaintiff to collect the alleged debt, entitled *American Express Centurion Bank vs. Amal Mulhem*, in The Circuit Court of Cook County, Illinois, Municipal Department, First District, under Case # 10 M1 107329. (Exhibit A, Complaint).

9. Soon thereafter, Plaintiff agreed to pay the alleged debt in full, and entered into a payment plan with Amex, via its agent Zwicker, via an Agreed Judgment Order. (Exhibit B, Order). Said Order provides, in pertinent part, as follows:

> 2. The Defendant agrees that installment payments shall be made as follows: $250.00 to be paid by March 15, 2010, and then $250.00 to be paid by the 15th of every month thereafter until the judgment amount is paid in full.
> (Exhibit B, Order)

10. Per Zwicker's request, Plaintiff agreed to have said monthly payments automatically deducted from her Bank of America checking account ("Account").

11. Amex, via its agent Zwicker did in fact cause separate automatic withdrawals of $250.00 each to be made from Plaintiff's Account, per the terms of the Order, starting in March, 2010 and ending in February, 2011.

12. Plaintiff complied with all of the duties imposed by her by the terms of the Order.

13. At no time did Plaintiff have insufficient funds in her Account which could have resulted in the failure of a payment to be deducted from her Account, by Zwicker.

14. Amex, via Zwicker, stopped withdrawing funds from Plaintiff's account in February, 2011.

15. Plaintiff did not owe any money to Amex after February, 2011.

16. Despite the fact that Plaintiff had fully complied with the repayment terms of the Order, Amex inexplicably assigned the alleged debt to NCO for the purpose of collection from the Plaintiff.

17. On or around April 20, 2011, Plaintiff received a letter from NCO ("Letter") stating, in pertinent part, that Plaintiff owed a "Current Balance Due" of $3256.63, and that the account will be forwarded to an attorney "to determine whether or not to execute the judgment American Express has obtained against you." (Exhibit C, Letter from NCO dated April 20, 2011).

18. Plaintiff did not have a "Current Balance Due" of $3256.63 at the time said Letter was sent, as Plaintiff had paid the debt off in full by that time.

19. NCO's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

### COUNT I-VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq*.-NCO

20. Plaintiff incorporates paragraphs 1-19.

21. In its attempts to collect the debt allegedly owed by Plaintiff, NCO violated the FDCPA, 15 U.S.C. §1692 in one or more of the following ways:

    a) Defendant violated 15 U.S.C § 1692d when it oppressively threatened Plaintiff with attorney action to collect the alleged debt when, in fact, Plaintiff did not owe the alleged debt being collected;

    b) Defendant violated 15 U.S.C. § 1692e, by falsely representing that Plaintiff owed Amex $3256.63 when, in fact, Plaintiff did not;

    c)      Defendant violated 15 U.S.C. § 1692e(2) when it misrepresented the amount of the alleged debt in its Letter;

    d)      Defendant violated 15 U.S.C. § 1692e(5) when it threatened to forward the account to an attorney to "execute the judgment" when, in fact, the judgment had already been paid;

    e)      Defendant violated 15 U.S.C. § 1692e(10) when it falsely represented the amount of the alleged debt in the Letter, to collect an amount from Plaintiff that she did not owe;

    f)      Defendant violated 15 U.S.C. § 1692f when it unfairly threatened to forward the account to an attorney to "execute the judgment" when, in fact, the judgment had already been paid;

    g)      Defendant violated 15 U.S.C. § 1692f(1) when it attempted to collect a debt from Plaintiff that was not authorized by the agreement creating the debt, or permitted by law;

22.     As a direct and proximate result of one or more of the statutory violations above, Plaintiff has suffered actual damages, including but not limited to suffering emotional distress, feelings of hopelessness, helplessness, irritation, anxiety, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

    A.      Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k;

    B.      Actual damages suffered by the Plaintiff;

    C.      Plaintiff's attorney fees and costs;

  D. Any other relief deemed appropriate by this Honorable Court.

**COUNT II-CONSUMER FRAUD-AMERICAN EXPRESS CENTURION BANK**

  23. Plaintiff incorporates paragraphs 1-22.

  24. At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

  25. Plaintiff is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(e)].

  26. The collection of debts constitutes services as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(b)].

  27. The collection of debts constitutes trade and commerce as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(f)].

  28. Duly authorized agents of Amex, namely employees and/or agents of Zwicker, made material misrepresentations to Plaintiff regarding settlement of the alleged debt, as well as Plaintiff's ongoing liability as to the amount of the alleged debt.

  29. Said misrepresentations include the statements made by Zwicker agents and/or employees to Plaintiff, made on behalf of Amex, where said agents and/or employees represented that upon payment of the alleged debt according to the terms of the Order, Plaintiff's obligation toward Amex would be extinguished.

  30. Plaintiff relied on Amex's representations, made through Zwicker, and paid all amounts due to Amex by allowing Zwicker to automatically debit Plaintiff's Bank of America checking account, on a monthly basis for the period of time outlined in the Order, until the debt was satisfied per the Order terms.

31. Plaintiff relied on Amex's representation that it would settle the alleged debt according to the terms outlined in the Order, and Plaintiff made payments toward the amount of the alleged debt thereafter in said reliance, which was reasonable.

32. Amex continued to attempt to collect the alleged debt from Plaintiff by consigning said debt for collection by its agent NCO **even after** Zwicker withdrew all amounts due, from Plaintiff's Bank of America checking account, per the terms of the Order.

33. Plaintiff would not have made payments toward the alleged debt had she known that Amex had not intended to honor the agreement reflected in the Order.

34. Plaintiff was damaged by Amex's actions and suffered, inter alia, emotional distress, feelings of helplessness, anxiety, and financial damages as the result of Amex's attempts to collect said alleged debt.

35. Amex's conduct is part of a pattern of misconduct which affects consumers and the public interest, and has a potential for repetition and further injury to others. Its actions in relentlessly attempting to collect a debt from Plaintiff in an amount she does not owe were made in reckless disregard of the rights of Plaintiff, thereby warranting the imposition of punitive damages.

36. At all times relevant to the facts alleged in this complaint, Zwicker's and NCO's efforts to collect the debt from Plaintiff were duly authorized by Amex, which had hired Zwicker and NCO to bring about collection of the alleged debt.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

A. Actual damages;

B. Punitive damages in the amount of $50,000;

C. Costs of bringing this action and attorney fees incurred in so doing, pursuant to 815 ILCS 505/10 (c);

## COUNT III-BREACH OF CONTRACT

37. Plaintiff incorporates paragraphs 1-36.

38. In March 2010, Defendant agreed to settle the alleged debt by accepting monthly payments from Plaintiff of $250 each to begin on March 15, 2010, and to continue monthly until the alleged debt of $3,227.63 is paid in full. (Exhibit B, Order).

39. The agreement was reduced to judgment on April 16, 2010. (Exhibit B, Order). The agreement, as reflected by the Order, is a valid and enforceable contract.

40. Per Zwicker's request, Plaintiff agreed to have said payments automatically deducted from her Account.

41. Amex, via its agent Zwicker did in fact cause separate automatic withdrawals of $250.00 each to be made from Plaintiff's Account, per the terms of the Order, starting in March, 2010 and ending in February, 2011.

42. Plaintiff complied with all of the duties imposed on her by the terms of the Order.

43. At no time did Plaintiff have insufficient funds in his Account which could have resulted in the failure of a payment to be deducted from her Account, by Zwicker.

44. Amex, via Zwicker, stopped withdrawing funds from Plaintiff's account in February, 2011.

45. Plaintiff fully performed all of her obligations under the terms of the Order.

46. Defendant failed to perform its obligations pursuant to the terms of the Order as it continued to attempt to collect the alleged debt via its agent NCO, for the amount of $3256.63, even after it had been paid off by Plaintiff.

47. Defendant failed to perform its obligations pursuant to the terms of the Order because it failed to file a Release of Judgment when Plaintiff had paid the debt off in full, per the terms of the Order.

48. As a result of Defendant's breach of the Order, Plaintiff was forced to hire an attorney to resolve the issue of Defendant's breach and to force Defendant to honor the terms of the Order, incurring attorney fees and costs thereby.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

A. Award Plaintiff judgment in the amount of her actual damages;

B. Award Plaintiff court costs;

C. Award Plaintiff whatever other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff hereby demands trial by jury in this action.

Respectfully submitted,

By: /s/ Mario Kris Kasalo
      Mario Kris Kasalo

Attorney for Plaintiff
**The Law Office of M. Kris Kasalo, Ltd.**
**"A Consumer Protection Law Firm"**
1800 West Roscoe Street, Suite 409
Chicago, IL 60657
Tel. 312.450.7849
Fax 312.698.5054

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the Defendant take affirmative steps to preserve all recordings, data, documents, and all other things that relate to Plaintiff, and to any other consumer treated as Plaintiffs were treated, and also to preserve all of Defendant's policies, practices and procedures that relate in any way to the allegations made in this Complaint. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

By: /s/ Mario Kris Kasalo
Mario Kris Kasalo

Attorney for Plaintiff
**The Law Office of M. Kris Kasalo, Ltd.
"A Consumer Protection Law Firm"**
1800 West Roscoe Street, Suite 409
Chicago, IL  60657
Tel. 312.450.7849
Fax  312.698.5054